The first case for the morning which is Jones vs. Attorney General, Mr. Guadagno? Yes. Thank you. May it please the court, my name is Matthew Guadagno, I represent the petitioner Cal Jones. I respectfully request three minutes for rebuttal time. Granted. Thank you, your honor. This is an immigration matter which involves whether the stop time rule, which precludes eligibility for cancellation of removal, may be applied retroactively to a conviction that predates the creation of the stop time rule. So I understand this at the outset. The relief, I believe I just heard you refer to and that I've understood from reading the briefs and the papers that's at issue here is cancellation of removal under 1229A, is that right? That's right. BA. And that is also a remedy that is created by IHRA. Correct. Is that correct? The stop time rule was created when and by what statute? The stop time rule was created by IHRA. That would be September 30th, 1990. So she wants relief under the new act, but she's suggesting that the stop time rule under the new act should not apply, indeed that it may be violative as improperly retrospective. Is that right? That is correct. All right. Just so I understand. Okay. And when we review statutes as to see if it's violative of impermissible retroactivity, we look to the Supreme Court's decision in Landgraf, which has a two-part test. The first part is, has Congress spoken with clarity? And then if not, we go to the second part, whether or not there's an impermissible retroactive effect. With regards to the first part, Congress has not spoken with clarity with regards to this statutory provision. INS v. St. Cyr decision by the Supreme Court is helpful with regards to determining the first step. In INS v. St. Cyr, the Supreme Court looked to the general effective date provision of IHRA-IHRA, that's IHRA-IHRA section 309c1. And in St. Cyr, the Supreme Court concluded that IHRA-IHRA 309c1 was not expressly retroactive. Therefore, they found ambiguity and proceeded to the second step. In this case, there's an additional curveball, which is that after IHRA-IHRA was passed, Congress made a technical correction to IHRA-IHRA. They created a law called NACARA. And NACARA has an amendment to the stop time rule. It provides a rule for what's called transition period cases. These are cases, there was a period of time where IHRA-IHRA was enacted, but didn't go into effect. So the old rules were still in play after IHRA-IHRA was passed. And under this NACARA statute, in limited circumstances, the stop time rule was applied to suspension of deportation cases. And this is actually helpful to us because suspension is a different form of relief than the relief Ms. Jones is seeking. She's seeking cancellation of removal from permanent residence, which is the equivalent of or the modern equivalent of a former form of relief called 212c. Wouldn't she have to be seeking 212c relief to get the appropriate, relevant, retroactive consideration? For purposes of the argument that I'm making here is that if you look, the government is relying heavily upon the transition period. But you're not answering Judge Laurent's question. Okay. Isn't that the case? Ultimately, go jump to step two, which under step two, you look to is there an impermissible Can she seek 212c relief? You virtually conceded she doesn't qualify for 212c. She cannot qualify for 212c relief because she has a post-EPA conviction. That is correct. But with regards to her expectations at the time she pleaded guilty to her first two offenses, the one in effect at the time was that you continue to remain eligible for 212c up until you applied for 212c. I have a question about her expectations. How can the application of the stop time rule in this case implicate fair notice, reasonable reliance, and settled expectations when cancellation of removal, which is what your client seeks, didn't even exist at the time of that guilty plea? Isn't that what makes this case quite different from what happened at St. Cyr? But at the time that she did plead guilty, there was an expectation that she would have some form of relief, that she wouldn't get essentially what was a summary deportation order. But not cancellation of removal, because as Judge Harden points out, it didn't exist. But at the same time, essentially cancellation of removal is essentially 212c under a different name and different form. Essentially what Congress did was they redesignated 212c to 240a, and they just made some modifications to it. They made it unavailable to aggravated felons, and they created the stop time rule. Essentially it's a form of relief for criminal aliens who've been in the United States for seven years. They also switched the permanent residency rule to five years, and then they made a physical presence for seven years. Did she have seven years? At the time of her plea, she did not have the seven years. She entered as a permanent resident in 1983. Her first conviction was in 1986. December of 86. That's the possession of marijuana count? Yes. Okay. So she had three years at that time. About three and a half years. Yes. Now, under 212c analysis, if she didn't have the other conviction, she would be eligible for 212c, despite the fact that she only had the three years in. And it was never disputed that if she didn't have the later conviction, that she would be eligible for 212c. So she had to behave herself, and she didn't. So if she had only known this change in the statute was going to occur, she wouldn't have committed the crime. Is that the area? At the same time, there has been a change in her rights. In this circuit, we have case law Atkinson v. Attorney General and Ponipulla v. Ashcroft, where there's slightly... Ponipulla involved a plea, didn't it? Both Ponipulla and Atkinson involved situations where individuals went to trial. And in those cases, this court addressed what is needed for there to be impermissible retroactivity. And what it said was that there needed to be an impairment of rights. For 212c relief. Yes. Because these defendants were eligible for 212c relief. But because Ms. Jones committed another crime, she's not. But there still is an impairment of her rights, because under the old rules, if you were eligible for 212c, you continued to be eligible. If you had additional convictions, there was no cutoffs. So that essentially, the new rules, there is an impairment because at the time she entered her plea, if she had gotten into subsequent convictions, she would have still been eligible for 212c. So therefore, it seems to me if you're saying something is retroactive, it's IRERA rather than the stop time rule. That she should have been able to commit further crimes without disqualifying yourself, but you are acknowledging that she is disqualified for 212c relief.  212c, that is correct. But at the same time, we need to look at when she pled guilty in 1986, what the expectations were and what her rights were. And the rights were at that time in 1986, that she would have been eligible for some form of relief and she would have continued to be eligible for some form of relief if she had gotten into trouble in the future. So there is what would be considered under Parnapula and Atkinson an impairment of her rights. And that she is not in the same position today as she would have been prior to IRERA. Let me ask you a question about the transitional cases that you mentioned. Would you agree that it's clear that Congress said that the stop time rule applies to transitional cases at the time of IRERA's enactment? I would not agree with that. What Congress is saying is that the stop time rule applies to suspension cases in transition. Keep in mind that 212c was still in existence in these transitional cases. But my point is that it applies to the suspension cases. So what that means is that those that were in process at that time lose. The statute is adverse to them because of its application. Isn't there something in Congress about your argument that if Congress said pending cases, in impending cases, the alien loses? But somehow if the case isn't pending but comes later, then you win? That seems a little counterintuitive, doesn't it? Congress isn't speaking to all of the cases when they pass NACARA. They're speaking to a limited number of cases. They're speaking specifically to transitional cases for people who are seeking suspension of deportation and only that form of relief. If Congress could have gone further, they didn't. Their silence or their failure to do so should indicate that this provision should not be applied retroactively in this instance. Remember, the presumption is against retroactivity. So where there's silence by Congress, there should be a presumption against retroactivity. And even more importantly here, there's a situation where Congress spoke to retroactivity in some instances and not this instance. In INS v. St. Cyr, one of the things that was looked at was that in IRA-IRA, Congress was very specific in numerous situations when it wanted to be retroactive. One example comes to mind, the aggravated felony bar. They specifically said this will be applied retroactively. Here, there's not that specificity. So because there's that lack of specificity, we should basically skip on step one and go to step two and consider whether or not there is an impermissible retroactive effect. I see I'm out of time.  Thank you. Ms. Cantor? No, this is Mr. Cantor. Good morning. May it please the Court, Ethan Cantor for Department of Justice. Before I pick up on Judge Hardiman's last question, which I think goes to the step one of Landgraf as to whether or not through normal tools of statutory construction, you can infer congressional intent to apply the new rule retroactively, I just want to highlight the Court's decision in Okeke, it's O-K-E-K-E, in which I have cited it in my brief, and I noted it because the First Circuit noted it in particular as an example where this Court applied the stop time rule in permanent rule cases retroactively. And although Okeke focused on whether or not the period of continuous residence could restart, and indeed it went on to find that it could if there was another lawful entry, it could not have even reached that question had it not first decided that the stop time rule applies retroactively. This was a case in which the crime occurred in 1983. That was not a part of the whole thing in Okeke. Well, I went back and examined it very, very closely. I have it before me, and I think I understand your point that that has to be an assumption made to get to the result in Okeke, but that was not an issue squarely presented to the panel, or at least squarely addressed by the panel. With respect, I believe the Court states that it's addressing the narrow issue of whether claim for relief is barred by application of the stop time rule. And before it gets into can it restart, it finds at page 588 here, Okeke's commission of a controlled substance offense in 1983 triggered the stop time provision of the cancellation of removal statute. Yes, that's one sentence. It doesn't go into the issue that we're debating this morning. However, it's a whole thing, and it could not have proceeded to what was, turned out, the main issue in the case if it had found that retroactivity was impermissible. Okay. To pick up on Judge Hardiman's last question, I believe that goes to a step one Landgraf analysis, which my brother counsel would like to skip or move from. And I don't think we should move from it that quickly, because there's really no difference between the normal tool of statutory construction in finding intent by saying it would be incongruous to apply it to aliens in pending cases, changing the rule in the middle of the game, and not apply it to permanent rule aliens where the game hadn't even started. That's the normal statutory construction tool of avoiding construing an absurdity on the statute. And it's really... Well, I mean, couldn't it just be sloppy draftsmanship? It seems to me there may have been a misstep by Congress here, but doesn't step one of Landgraf require that there be a clear statement? Don't you have a better argument on step two? Step one of Landgraf did a talk about clear statement. However, in subsequent decisions by the Supreme Court, Martin V. Haddix, Fernandez Vargas, the court emphasized that a clear statement can be gleaned through normal tools of statutory construction. It did not have to be explicit in the plain language. But what is explicit is that the transitional rule is with regard to the suspension of deportation, right? Well, it's with respect to transition... What is there in the transitional rule that indicates it's applicable to the determination of eligibility of cancellation of removal? Because the stop, as Your Honor pointed out at the beginning of the argument, the stop time rule itself is contained in the cancellation of removal provision and was enacted with IRA-IRA in 1996. And Congress enacted an additional effective date provision to make clear that that rule applied to orders to show cause. Initially, it had said notices to appear. But it wouldn't have made sense to apply it to a notice to appear before, on, or after because as to the first two, before and on, there were no notices to appear. That's not how removal proceedings would be commenced. Only on the effective date of IRA-IRA, which was April 1, 1997, six months after enactment, would notices to appear get in gear. Congress changed it in the CARA to change notices to appear to orders to show cause. And then the courts construed that to apply to suspension. But nothing in that transition rule actually says suspension of deportation. And nothing in the stop time rule says suspension of deportation. But the courts applied it because if you're applying it to an order to show cause, the only form of relief, analogous form of relief at that time, was suspension of deportation. And it used the same terms, continuous residence, as were then imported into cancellation. So if Congress is saying applies to an order to show cause with respect to a continuous residence rule, they apply that rule. It happened to apply to suspension. Couldn't Congress have been explicit in that the way you just were? Well, I think Congress can always be more explicit. However, it didn't need to enact an effective date provision with regard to the stop time rule or cancellation because with respect to the application of the stop time rule and cancellation questions, because it was effective on that date. But it keeps changing. There's notice to appear. There's orders to show cause. There's suspension. There's cancellation. They're using these words. Shouldn't we hold Congress' feet to the fire and make sure that they're explicit as to what implications subsequent legislation has on the prior statutes and the different nomenclature that they use? Well, when Congress is silent, its silence does not always equate with ambiguity. And where a court can find through reasoning that it's incongruous, that it would be absurd to apply it to pending cases and not permanent cases, that's a legitimate avenue to discerning congressional intent. Isn't Mr. Guadagno's complaint really not the retroactivity of the stop time rule but the fact that Ms. Jones' subsequent commission of a crime has rendered her eligible for 212C relief and that IRERA should be looked at on the issue, is it constitutional or unconstitutional, to disqualify her for 212C relief because of her subsequent crime? But that's not the issue they've raised, so that's not the issue before us. But if we focus on the retroactivity of a stop time rule, are we maybe addressing a question that doesn't need to be addressed in this case and creating a decision that perhaps should wait for a case where it is really relevant rather than this case where the petitioner is trying to apply it to get a remedy that didn't exist when the statute was passed? And I think your last point, Your Honor, is the critical one. Although Mr. Guadagno indicated that Congress simply redesignated suspension and 212C-ish type relief as cancellation, what the statute said is 212C and suspension are repealed. What he's trying to do is somehow get back to 212C relief, which Ms. Jones is eligible for, through cancellation of removal, but it's really 212C relief that she's wanting, that she's disqualified for, and should it be the act that disqualified her that he should really complain about rather than the stop time rule? I would agree, Your Honor, and this is why I cited the Supreme Court's decision in Fernandez-Vargas, which focused on the degree to which the petitioner has control. In the 212C cases, it was a completed transaction in the sense that, you know, to apply the new rule somehow undid the benefit of the bargain. However, in 1997, when IRAIRA passed, I call it IRAIRA. I'm of the old school. Okay. These are the new school Germans. When that law passed. I was around when it passed. This petitioner had committed crimes in 86 and 93, both of which, based on St. Cyr, would have still enabled her to apply for 212C relief. Going forward from 1997, this petitioner had a choice. So I was going to say, was there a point in time then along that timeline that she could have made application? For 212C? Yes. Absolutely. She chose not to do so. Well, the record in this case reflects that 212C was raised before the immigration judge. No, I mean she chose during the early period of time when she had it available to her not to do so. Not to seek it because I believe she knew that, even assuming she could overcome the post-edva conviction, which counsel has now conceded precluded 212C relief eligibility, that would still only get her two out of three. So the focus then shifted to cancellation, which was the only avenue for waiving all three convictions. But pushing that circle into the square hole would not be able to occur because even under the Step 2 analysis, there cannot be a reliance interest in a relief that wasn't available at the time that she committed her crime. St. Cyr emphasizes it's at the time of the plea under the law that then existed. And what Congress did was it changed the relief. It didn't change just a rule on computation of time. It changed the relief in 1996. And going forward from there, it was new relief and a new rule, which required that applicants had not committed crimes during the accrual of the new continuous residence period of eligibility. If the court has any further questions, I can address them.  Rebuttal. I'm going to focus on the second tier of Landgraf and whether the application of the statute is impermissibly retroactive. And with regards to that, I'd like to point the court to the fact that the Ninth Circuit has also addressed this decision in a case called Sonotes Cruz, which is cited in our papers. And also in that Sonotes case, there was a similar problem where at the time of the alien's plea in that case, that alien, if my memory serves correctly, was not even removable at the time of their plea. And the Ninth Circuit still found that there was an impermissible retroactive application of the statute. Also in our papers, we cited a district court case from the Southern District of New York called Henry, which came to similar conclusions. On the other side of the coin, the contrary law is a Fifth Circuit case called Heaven. And Heaven is a case that essentially looked to the first step of Landgraf and looked at transition cases. And because their focus was on transition cases, we contend that that decision is incorrect. And unless there are any further questions... No, thank you very much, Mr. Granado. Thank you. Thank you, Mr. Kanner. We thank counsel for their helpful arguments and will take the case under advisement.